IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE, KNOXVILLE DIVISION

| | |
|---|---|
| NICHOLE D. BASS, Individually, and On behalf of similarly situated persons, Plaintiff, | ) ) ) ) |
| v. | ) No. 3:05-CV-586 ) JUDGE VARLAN |
| SCHELL & KAMPETER, INC., d/b/a DIAMOND PET FOODS, INC., and DIAMOND PET FOODS, | ) MAGISTRATE JUDGE GUYTON ) CLASS ACTION ) ) |
| Defendants. | ) |

## FINAL JUDGMENT

This matter came before this Honorable Court for purposes of a fairness hearing pursuant to Rule 23(e), F.R.C.P., on March 26, 2008, the date of said hearing having been established by the Court in the Court's order certifying a plaintiff class and preliminarily approving class action settlement, said order having been filed on November 6, 2007 (Doc. 44), the parties' Joint Motion in Support of Final Approval of Settlement Agreement and Entry of Judgment (Doc. 48) and the parties' Memorandum in Support of Final Approval of Settlement Agreement and Entry of Judgment (Doc. 49).

Upon the joint motion made on behalf of plaintiffs, through counsel, and on behalf of defendants, through counsel, upon the Court's consideration of the statements and arguments of counsel, upon consideration of Affidavits and Exhibits filed in this matter, upon consideration of the sworn testimony of the named plaintiff, Nichole D. Bass, and upon the record in this cause considered as a whole, the Court finds the following:

1) The Court finds that it has jurisdiction over the parties and disputes for the purposes of this settlement, and makes these findings pursuant to Rule 23, Federal Rules of Civil Procedure, the Class Action Fairness Act, and other law as applicable.

2) The Court further finds that the Notice specified in detail in the Settlement Agreement and Exhibits thereto, and as specifically directed by the Court in its Order of Preliminary Approval of the Class Action Settlement on November 6, 2007, is found to be reasonable, adequate, and the best practicable under the circumstances of this case; that, consistent with the Affidavit of Lance Blair, Garden City Group, said Notice as prescribed by the Settlement Agreement and directive of this Court has been given so as to apprise members of the class of the pendency of this action, the terms of the settlement, the right to object, and the right to appear at the hearing on final approval, and that the Notice is adequate and sufficient to all persons entitled to receive such Notice, and meets the requirements of due process and other rules or laws.

3) The Court further finds that it has exclusive and sole jurisdiction over this settlement, including its administration, consummation, claim procedures, enforcement and any other issues or questions that may arise, and all proceedings both before and after the Final Judgment becomes final and is no longer subject to appeal, and over enforcement of the Final Judgment.

4) The Court further finds that there is no just reason for delay in regard to the entry of a Final Judgment in this cause.

IT IS ORDERED, ADJUDGED AND DECREED that the Settlement Agreement heretofore filed in this cause on or about November 6, 2007 (Doc. 44-2) be and the same is hereby confirmed, ratified and approved in all respects, the Court finding that the said settlement is fair, reasonable, and adequate, and the Court hereby finally approves and certifies this Class Action and the Plaintiff Subclasses as outlined in the Settlement Agreement.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED as follows:

## I. DEFINITIONS

Under this Final Judgment, the following terms shall have the meanings set forth below:

A. "**All claims**" means all claims, demands, actions, suits, and causes of action against Defendant and any of its officers, directors, employees, managers, supervisors, agents, representatives, insurers, whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation or common law that any member of the Class has, may or ever have or had, relating in any way to the conduct, acts, omissions, that were or could have been alleged in the Amended Complaint (Doc.10) relating to any alleged use of recalled products, alleged afalatoxin problems and the Defendant's recall and claims for any damages or injuries, of whatever type or description, arising or that may have arisen as a result of any acts or omissions of Defendant or as a result of the recall to the Class or any member thereof. "All claims" includes those claims specifically set out by the Court as they relate to the recall.

B. "**Recall**" means the recall by or for Defendant of certain specified Diamond Pet Food products before, in, or about December, 2005, and January, 2006, relating to certain products manufactured at Defendant's plant in Gaston, South Carolina between September 1, 2005 to December 11, 2005.

C. "**Product(s) subject to the recall**" means Defendant's pet food products that (1) were made or manufactured by Defendant at its Gaston, South Carolina plant,

**AND**

(2) that were offered for sale, sold, or provided to Class members by dealers or retailers or otherwise made available to or used by them for their pets,

**AND**

(3) that were purchased, obtained, used, made available, or intended to be purchased or obtained, or intended to be purchased or obtained by Class members for their pets in the following States or areas: Tennessee, Mississippi, Alabama, Georgia, Florida, South Carolina, North Carolina, Virginia, Kentucky, Ohio, Michigan, West Virginia, Pennsylvania, Maryland, Delaware, Rhode Island, New Jersey, New York, Massachusetts, Vermont, Maine, New Hampshire, and the District of Columbia;

**AND**

(4) that were one of the following brands – Diamond Premium Adult Dog Food, Diamond Hi-Energy Dog Food, Diamond Maintenance Dog Food, Diamond Performance Dog Food, Diamond Puppy Food, Diamond Low Fat Dog Food, Diamond Maintenance Cat Food, Diamond Professional Cat Food, Country Value Puppy, Country Value Adult Dog Food, Country Value High Energy Dog Food, Country Value Adult Cat Food, Professional Reduced Fat Chicken & Rice Dog Food, Professional Chicken & Rice Adult Dog Food, Professional Puppy Food, Professional Large-Breed Puppy Food, Professional Reduced Fat Cat Food, and Professional Adult Cat Food;

**AND**

(5) that were identified by the following manufacturing code information: a "Best By" date between March 1, 2007 and June 10, 2007. For 18-55 lb bags, a capital "G" is in the 11th or 12th position from left of the date code. For 4 lb to 8 lb bags, a capital "G" is in the 9th position from left of the date code.

**OR**

Diamond professional for Adult Dogs with a "Best By" date of January 29, 2007.

D. The "**Class**" means the Settlement Class preliminarily certified by the Court and is defined as set forth and approved by the Court, as follows:

4

All persons and business entities who purchased "product(s) subject to the recall" as defined in Section "C" above and either discarded the product as a result of the recall or fed the product to their dog and subsequently incurred an expense or damages as a result of feeding the product as further defined in Section III. B below.

E. "**Class counsel**" means A. James Andrews, who is designated "lead counsel," and Perry A. Craft.

F. "**Objection Date**" means the date by which members of the Class must file with the Court and serve on Class counsel and counsel for Defendant notice of any objection or opposition to the Settlement Agreement or any part or provision thereof. The objection date (deadline for objections) was February 26, 2008.

G. "**Settlement Claims Administrator**" (SCA) means the Garden City Group, 105 Maxess Road, Melville, NY 11747, a competent firm selected by the parties and approved by the Court designated to manage specified parts of the notice program, process claims, issue checks for Class members, and related tasks as set forth herein. The SCA shall be jointly supervised by Plaintiff's Lead Counsel and counsel for Defendant, and copies of all information, data, or correspondence sent to the SCA by counsel of record or by Defendant shall be simultaneously sent to opposing counsel. Defendant shall pay all reasonable costs and expenses of the SCA relating to this Settlement Agreement.

H. "**Settlement Fund**" shall mean the amount set aside by the Defendant to settle all claims and attorneys fees and costs in this case and shall define the Defendant's maximum liability under this settlement agreement.

I. "**Value of the dog**" means the fair market value of a dog. It does not include loss of affection, mental anguish, emotional suffering, and does not include the costs of burial or cremation. A dog that is a recognized breed shall be valued by the breed, recognized type, or other extraordinary factor, (example: seeing-eye dog, a drug sniffing dog), its age, its medical condition, and other similar factors. The "value of the dog" as to a non-officially recognized

5

breed, or a mixed breed, shall be deemed not to exceed $200.00. Under no circumstances shall the fair market value of a dog exceed $1,000.00.

## II. OPTING OUT AND OBJECTION PROCEDURES

A. **Opt Out**: All putative class members have been given sixty (60) days from the date of the last mailing (not including remailings due to change of address) or publication of the notice to opt out of the class. A putative class member must have opted out by notifying the SCA in writing postmarked by March 16, 2008 of his or her intention to opt out of this settlement. The putative class member must include his/her name, address, telephone and signature.

B. **Procedures for Objecting to the Settlement**: Any member of the Class, upon having made a timely objection, could have appeared at the hearing on final approval of the Settlement to present any objection to the Settlement or any of its terms or provisions, including costs, attorney fees, or otherwise. There was only one objection filed and that objection was resolved and has been withdrawn prior to the fairness hearing by the parties having provided for the concerns of that objector in the release language contained herein (Section VI). No other objections have been filed.

## III. STRUCTURE OF SETTLEMENT AND CLAIMS' PROCEDURES

The Court hereby approves the Settlement as set forth in the Settlement Agreement with an estimated face amount of $3,100,000.00. This Settlement consists of a monetary payment by Defendant, non-monetary, but valuable benefits to Class members, and shall be implemented by and through the mandatory claims process set forth in the Settlement Agreement with Disagreements referred to a third party neutral for a fair, quick, expeditious, inexpensive and binding resolution on Defendant and Class members. To the extent that exhibits are referred to herein, said exhibits are exhibits to the Settlement Agreement heretofore filed. (Doc. 44-2).

A.  **Settlement Fund**: Based on projected claims, the parties have agreed to establish an initial settlement fund of $1.86 million. The attorneys representing the class will receive 25% of this amount ($465,000.00 in attorney fees) within ten (10) days of final approval and entry of this Final Judgment by the Court and the Judgment becoming non-appealable. However, because the actual number of claims is difficult to predict, the Defendant has agreed to provide up to $1.24 million in additional settlement funds as needed. The amount of class counsel's attorneys fees will not be affected by additional contributions (if any). Within ten (10) days after final approval and entry of the final Judgment and the final judgment becoming non-appealable, the defendant shall pay an amount to the SCA sufficient to pay for the proffered, legitimate claims received by the SCA. The Defendant shall also from time to time provide sufficient funds to the SCA such that the SCA can fulfill its responsibilities pursuant to the Settlement Agreement.

B.  **Class Members' Damages and Injuries Due to Recall: Claims**

The parties have agreed to the following subclasses. Class members shall be entitled to those benefits conferred upon each subclass, as may be applicable, as defined below. Each class member shall be bound by the claims procedures defined below:

1. **The Class member purchased but never used a recalled pet product, never fed his/her pet or animal the recalled product, and the class member discarded or retained the product, did not return the product to the dealer or otherwise exchange the product.**

Upon completing a claim form, substantially in the form similar to <u>Exhibit 4</u>, the Class Member shall submit the same together with all other documentation, if any, by regular U.S. mail (first class) to the SCA, who shall send a copy to Defendant's representative. Though the SCA may seek clarification or other simple information, unless the SCA in fact does so or the Defendant's representative makes a substantial, reasonable good faith objection (for example, without limitation: the consumer purchased a product that was not subject to the recall; the product was purchased in a State or area not subject to the recall; the product was purchased

7

in a retail outlet that did not distribute the Defendant's products; that the product was returned or otherwise exchanged by the customer), after clarification and determination of the validity of the Class Member's claim, the SCA shall approve the claim if it fairly and reasonably establishes the type of damage specified in this sub-paragraph.

In order to establish a claim, a Class Member must provide sufficient information about the purchase or use (or non-use) of the product to satisfy the SCA that the purchaser did, in fact, purchase or otherwise receive (example: as a gift) a product subject to the recall. Examples of "sufficient information" to satisfy the SCA would include, without limitation, a sworn statement signed by the purchaser representing the nature of the purchase, the purchase date, the name of the dealer from whom the product was purchased, the quantity purchased, the product purchased and information as to whether the product was used, not used, discarded, returned, exchanged; cancelled check(s); copies of receipts (such as cash register receipts) from the dealer; copies of credit card summaries. The Class Member in submitting a claim shall receive one of the following:

  a. Payment in accordance with the schedule attached as <u>Exhibit 5</u> up to a maximum value of two (2) bags of pet food;

  <u>OR</u> in the event that total claims exceed the amount of the settlement fund,

  b. A *pro rata* share of the net proceeds of the Settlement fund not to exceed the actual or estimated purchase price of up to two (2) bags of the pet food described by the Class Member.

  **2. In addition to having purchased or used a recalled pet food product, after a Class member learned about the Recall, the Member took the pet or animal to a veterinarian for aflatoxin – specific testing and the tests proved negative for aflatoxin related problems.**

Upon completing a claim form, substantially in the form similar to <u>Exhibit 4</u>, the Class Member shall submit the same together with all other documentation, if any, regular U.S. mail

(first class) to the SCA who shall provide a copy to and Defendants' representative. Though the SCA may seek clarification or other information, unless the SCA in fact does or the defendant's representative makes a substantial reasonable good faith objection (for example, without limitation: the consumer purchased a product that was not subject to the recall; the product was purchased in the state or area not subject to the recall; the product was purchased in a retail outlet that did not distribute the defendant's product; the product was returned or otherwise exchanged by the customer; the veterinary bill was not incurred or was unreasonable or unnecessary; etc.)

After clarification and determination of the validity of the class member's claim, the SCA shall honor and approve the claim if it fairly and reasonably establishes the type and damage specified in this subparagraph.

In order to establish a claim, a class member must provide sufficient information about the purchase or use of the products to satisfy the SCA that the purchaser did in fact purchase or otherwise receive (example: as a gift) a product subject to the recall. Examples of "sufficient information" to satisfy the SCA would include, without limitation, a sworn statement signed by the purchaser representing the nature of the purchase, the purchase date, the name of the dealer from whom the product was purchased, the quantity purchased, the product purchased and information as to whether the product was used, not used, discarded, returned, exchanged; cancelled checks; copies of receipts (such as cash register receipts) from the dealer; copies of credit card summaries or cancelled checks.

With regard to the veterinary bill, in establishing the cost of the veterinary bill or charge, the Class member must provide a billing, letter, or writing from a veterinarian or testing laboratory or facility, so as to reasonably establish veterinarian charges and/or testing charges, and that such charges were, in fact, incurred and related to aflatoxin testing. Though the SCA may seek clarification or other information, unless the SCA in fact does so or the Defendant's

representative makes a substantial, reasonable good faith objection (i.e., the consumer purchased a product that was not subject to the recall; the product was purchased in a State or area not subject to a recall, the product was purchased at a retail facility that did not carry the Defendant's products; veterinarian bill includes costs for a unrelated services; the veterinarian bill was not incurred or was not reasonable), after clarification, the SCA shall approve the claim if it fairly and reasonably establishes the type of damages specified in this sub-paragraph. The SCA shall be entitled, as necessary, to obtain from the Class Member specific authorization for the SCA (or counsel on behalf of the Defendant) to obtain any and all veterinary records as may be deemed to be necessary in their determination of the claim and in regard to any potential objections thereto. A Class Member having submitted a claim deemed valid shall receive the following:

    a.    A full or *pro rata* reimbursement of the actual cost of one visit to a veterinarian and any reasonable or necessary test(s) performed by or upon the recommendation or referral of the veterinarian to determine whether the animal had a symptom or illness directly caused by aflatoxin. However, the Defendant shall reimburse <u>only</u> for the share of the veterinary bill, costs, tests, or examination, and any preventative medical treatment or medications to determine whether the animal actually was affected by an aflatoxin, and shall not be required to reimburse for any other or unrelated portion of the veterinary bill. Furthermore, Defendant shall reimburse only for veterinary or related charges deemed reasonable, necessary and typical within the Class Member's community and in no event shall the Defendant be liable for a veterinary bill or bills for related tests, exceeding the amount of $200.00; AND if applicable, the payment provided in Section 1.

    3.    **The Class member's dog actually ate a recalled product and/or was offered a product subject to recall and was treated for aflatoxin- related symptoms but did not die from aflatoxin-related health issues.**

Upon completing a claim form, substantially in the form similar to Exhibit 4, the Class Member shall submit the same together with all other documentation, if any, by regular U.S. mail (first class) to the SCA who shall send a copy to Defendants' representatives. The Class Member may use a billing, letter or writing from a veterinarian or testing laboratory or facility. Though the SCA may seek clarification or other information, unless the SCA in fact does so or the Defendant's representative makes a substantial, reasonable good faith objection (*i.e.*, the consumer purchased a product that was not subject to the recall; the product was purchased in a State or area not subject to a recall, the veterinarian bill includes costs for a rabies vaccination or other unrelated service, the charges are unreasonable and specify in detail why), after clarification, the SCA will consider and approve the claim if it fairly and reasonably establishes the type of injury or damages specified in this sub-paragraph.

If the SCA approves the claim, he shall so notify the Class Member, who shall receive the following:

   a. A full or *pro rata* reimbursement of the actual cost of aflatoxin related veterinary examination(s), testing, and treatment for aflatoxin-related symptoms, and veterinary medications prescribed or specified by a veterinarian and any test(s) on the animal to determine whether the animal had an aflatoxin-related illness resulting from the animal's ingestion of the recalled product up to a maximum payment of $1000.00 per dog; AND if applicable, the relief provided in Section 1.

**4. Death of a dog caused by aflatoxin consumed by dog from one or more of Defendant's recalled products.**

Upon completing a claim form, substantially in the form similar to Exhibit 4, the Class Member shall submit the same together with all other documentation, if any, by regular U.S. mail (first class) to the SCA, who shall send a copy to Defendants' representatives. The Class

Member may use a billing, letter or writing from a veterinarian or testing laboratory or facility regarding the veterinarian bill(s), invoice(s), and costs for testing to support the claim.

If death of a pet or animal is claimed, the Class member shall explain in detail the cause of death, the date of death, and licensed veterinarian's statement that connects the dog's death to the aflatoxin ingested from a product subject to the recall. Though the SCA may seek clarification or other information, unless the SCA in fact does so or the Defendant's representative makes a substantial, reasonable good faith objection or offers a valid defense (*i.e.*, the consumer purchased a product that was not subject to the recall; the product was purchased in a State or area not subject to a recall; the product was purchased in a retail facility that did not offer the Defendant's products for sale; the veterinarian bill includes costs for unrelated charges, the charges or assumptions are unreasonable and specify in detail why, the value of the pet or animal is excessive, the death of the pet was not due to aflatoxin), and after clarification, the SCA will consider and approve the claim if it fairly, reasonably, and satisfactorily establishes the type of injury or damages specified in this sub-paragraph.

If the SCA approves the claim, the SCA shall send the Class Member the following:

The fair market value or a pro rata share of the market value of the dog up to a maximum of $1,000 per dog; AND if applicable the relief provided in Section 1 and/or Section 3.

5. **A putative class member under Section 2, 3, or 4 above, who has already settled a claim with the Defendant or the Defendant's insurance carrier and who contends that he/she may be legally entitled to other relief under this settlement.**

The Defendant and its insurance carrier have established a claims handling facility and claims handling procedures, which facility and procedures were in place prior to the filing of this lawsuit. Pursuant to those procedures, the Defendant and its insurance carrier have, heretofore, resolved approximately 1,204 claims. The types of claims which have heretofore been resolved, include, generally and without limitation the following: claims in which veterinary bills for

12

examination, testing or treatment have been incurred; claims in which pets have died and claims for refunds having to do with monies expended for the purchase of Diamond Pet Food products.

Additionally, pursuant to the recall which was effectuated by the defendant, an estimated 350,000 bags of dog food have been returned, replaced or refunds issued. Plaintiff's counsel has requested from defendant and defendant has supplied to plaintiff's counsel information necessary for plaintiff's counsel to generally review settlements heretofore made. While plaintiff's counsel does not represent that it has reviewed complete details of each and every such settlement, plaintiffs' counsel agrees that the settlements heretofore made by the defendant appear to be generally reasonable and generally consistent with the outline, intent, and scope of this proposed settlement document.

If a Class member in this category believes that they are legally entitled to reopen their claim and vacate their release, the Class member must file a claim form substantially in the form similar to Exhibit 4 and shall submit it together with documentation, if any, by regular U.S. mail (First class) to the SCA who shall provide a copy to defendant's representatives. The class member must demonstrate to the SCA that they are legally entitled (e.g. fraud, coercion) to reopen their claim and vacate the release. The class member must also submit with the claim form a valid check payable to the SCA in the amount equal to all monies paid to the class member by Diamond or its insurance company. A dishonored check will result in the denial of the claim. If the claimant does not have any legal basis to reopen their claim and vacate the release, the SCA shall deny the claim, notify the Class member with forty-five (45) days and return the check. If the SCA determines that a Class member is legally entitled to reopen their claim and vacate the release, the SCA shall process the claim pursuant to Section III B. 1, 2, 3, or 4 within twenty (20) days of notification.

C. **<u>Notification to Claimants and Binding Arbitration</u>**

The SCA shall notify a claimant with forty-five (45) days of receiving the claim form and all necessary information to decide the claim. At that time, the SCA shall notify the claimant whether the claim will be accepted and paid within the terms of this agreement or rejected. Within ten (10) days of receiving notification, if a Class member or the defendant disagrees with any determination by the SCA, either the Class member or defendant may challenge the decision by notifying the SCA in writing, explaining in detail the reason for the disagreement. Thereafter, a third party neutral selected by the SCA will fairly review the claim, seek any clarification from the Class member or defendant and schedule a telephone conference not to exceed one-half hour. The third party neutral will announce his or her decision by brief written decision (1 page or less) within seven (7) days of the telephone conference. The third party neutral's decision will be binding on all parties.

D. **<u>Miscellaneous Provisions</u>**

1. When death of a pet or animal, veterinarian's bills or invoices, bills or invoices for testing, medicines or special treatments are claimed, at defendant's specific request, a class member shall timely provide authorization for the SCA, Defendant or Defendant's counsel, to obtain copies of any documents or records directly from a provider or other source, and when feasible, shall timely provide true copies of relevant requested records in his or her possession. At Defendants, Defendant's counsel or SCA's specific request, in the event there is a question as to the value of the animal and breeder records, AKC records or records of similar organizations which could help the SCA determine the value of a pet, a class member shall also timely provide authorization for the SCA Defendant, or Defendant's counsel to obtain copies of any such relevant documents.

2. Neither plaintiff nor class counsel shall attempt to degrade, diminish or

otherwise disparage the efforts which the defendant or its representatives or counsel have made in regard to this case.

3. Defendant's Good Faith: Defendant shall exercise good faith in considering whether to oppose any claim, in whole or part, by a Class member, and shall conduct itself so as to accomplish these purposes, not unduly burden Class members or seek to obtain information or records that are not strictly required to assert a defense or objection. This provision may be enforced by motion made by Class counsel after notice and a face-to-face meeting with counsel for the Defendant.

4. Accounting: The SCA shall keep and maintain an account of all records and documents received by any Class Member.

5. The SCA and any third party neutral may dismiss a claim or an objection or defense to it based upon a claimant's or Defendant's fraud, bad faith, unreasonable conduct or demand, or persistent or willful misconduct.

6. All claims by Class members must be initially filed within 90 days of the date of last notice or publication. Accordingly, all claims of Class Members must be postmarked by April 15, 2008. Any claims filed thereafter shall be forever barred. All checks shall be mailed or distributed to Class members within 6 months of the Final Judgment becoming final and non-appealable.

7. Pro Rata Distribution; Return of Surplus: If the amount of funds paid by Defendant is insufficient to pay all valid claims actually made and awards by the third party neutral, then Class members shall receive a *pro rata* distribution of the settlement fund, and the SCA shall issue or cause to be issued checks or negotiable instruments to individual Class members for their pro rata shares promptly. In the event that the amount of claims totals less

than the amount of the balance of the settlement fund, any surplus funds shall be returned to Defendant.

        8.      The representative plaintiff shall be paid $2,500.00 from the settlement fund for her efforts on behalf of the class. This payment shall be made within ten (10) days of the final approval of this settlement by the Court and the judgment becoming final and non-appealable.

## IV.   INJUNCTIVE RELIEF

The defendant shall not use the words "single source" in its marketing for a period of two years after the entry of this final judgment.

## V.   COSTS OF SETTLEMENT

        A.      Defendant shall bear all reasonable costs associated with this Class action, including but not limited to the costs of settlement, cost of settlement administration and implementation of settlement, costs of claims administration, notices, mailings, and court costs. Defendant shall not be responsible for Plaintiff's or Plaintiffs' counsel's expenses in excess of $10,735. Provided further, these expenses are in addition to Class Counsels' reasonable attorney's fees provided for elsewhere herein (*See* Paragraph III A, above).

        B.      The SCA, Defendant and Lead Counsel shall maintain and keep all records of expenditures and awards, however denominated, contemplated or provided for in this Settlement Agreement.

## VI.   EFFECT OF ENTRY OF FINAL JUDGMENT

The entry of this Final Judgment by the Court and the undertakings by the defendant hereunder and pursuant to the Settlement Agreement are in complete settlement of the claims of the plaintiff and the class members and of any claims that could have arisen or could have been asserted by class members based upon the sales transactions covered in this Judgment and in the

Settlement Agreement. Upon the entry of this Judgment, the defendants, Schell and Kampeter, Inc., d/b/a Diamond Pet Foods, Inc., Diamond Pet Foods and their directors, officers, agents, and employees shall be and hereby are fully released and forever discharged of and from any and all claims, demands, charges, complaints, rights, and causes of action of any kind, by the plaintiffs, the class or class members (except for those class members who have elected to "opt out" of the class) arising out of or relating in any way to Schell and Kampeter, Inc., d/b/a Diamond Pet Foods, Inc., and/or Diamond Pet Foods' sale of pet food to the plaintiff class members during the class period. This Judgment is a final and binding judgment among the plaintiff, the class members who have not elected to opt out, and Schell and Kampeter, Inc., d/b/a Diamond Pet Foods, Inc., and Diamond Pet Foods.

This Final Judgment and Decree does not constitute an admission of liability by Schell and Kampeter, Inc., d/b/a Diamond Pet Foods, Inc., and/or Diamond Pet Foods and does not constitute evidence of wrong doing by Schell and Kampeter, Inc., d/b/a Diamond Pet Foods, Inc., and Diamond Pet Foods, or any of their directors, officers, agents, or employees, as said entities have denied and continue to deny any acts of wrong doing on their parts.

The general and full releases referred to in this Section are intended to be full and final binding releases of all claims that were or could have been asserted or that arise out of or could have arisen out of or relate to claims that were asserted against Schell and Kampeter, Inc., d/b/a Diamond Pet Foods, Inc., and Diamond Pet Foods in this action by the Class or class members and such releases shall be construed broadly to effect that purpose. The general and full releases shall survive the termination of this Final Judgment and Decree following the administration and consummation of the settlement.

This is settlement between Schell & Kampeter, Inc., d/b/a Diamond Pet Foods, Inc., Diamond Pet Foods and Class members and this Settlement shall not impair the rights of Schell

& Kampeter, d/b/a Diamond Pet Foods, Inc., and Diamond Pet Foods to proceed against any other parties or entities for claims of indemnity or contribution.

Nothing in this Settlement shall impair any rights which Performance Ag, LLC, Palmetto Grain Brokerage, Inc, and/or Edgar Woods have against Schell & Kampeter, Inc. and/or Diamond Pet Foods, Inc. Specifically and without limitation, all rights of contribution and indemnity which they may have are specifically preserved.

Entered into this _____ day of _____, 2008.


_____s/ H. Bruce Guyton_____
United States Magistrate Judge


**Attorneys for the Class:**

s/A. James Andrews
Mr. A. James Andrews, BPR# 015772
905 Locust Street
Knoxville, TN 37902
Telephone: 660-3993

s/Perry A. Craft
Perry A. Craft, BPR # 006056
Craft & Sheppard PLC
214 Centerview Dr Ste 233
Brentwood, TN 37027
Phone: 615-309-1707

**Attorneys for Schell & Kampeter, Inc., d/b/a**
**Diamond Pet Foods, Inc., and Diamond Pet Foods:**

s/William A. Young
s/Jeffrey R. Thompson
William A. Young, BPR #001345
Jeffrey R. Thompson, BPR # 020310
O'NEIL, PARKER & WILLIAMSON
P. O. Box 217
Knoxville, Tennessee 37901-0217
(865) 546-7190